# **EXHIBIT A**

**SUMMONS - CIVIL**
JD-CV-1    Rev. 2-13
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

*See page 2 for instructions*

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE
STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 70 Huntington Street, New London, CT 06320 | ( 860 ) 443-5363 | **January** 28  2014 |
| | | Month / Day / Year |

| ☒ Judicial District | G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* |
|---|---|---|---|
| ☐ Housing Session | Number: | **New London** | Major: **P**   Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| The Marcus Law Firm, 275 Branford Road, North Branford, CT 06471 | 035870 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( 203 ) 481-3330 | |

| Number of Plaintiffs: **2** | Number of Defendants: **2** | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Aldi, Arthur Jr.<br>Address: 9 Ridgewood Drive<br>Norwich, CT 06360 | P-01 |
| Additional Plaintiff | Name: Aldi, Sherry<br>Address: 9 Ridgewood Drive<br>Norwich, CT 06360 | P-02 |
| First Defendant | Name: Wells Fargo Bank, N.A., Corporation Service Company, Agent for Service<br>Address: 50 Weston Street<br>Hartford, CT 06120-1537 | D-01 |
| Additional Defendant | Name: Delmato, Gerald M.<br>Address: 238 Krug Road<br>Preston, CT 06365-8003 | D-02 |
| Additional Defendant | Name:<br>Address: | D-03 |
| Additional Defendant | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left<br>Edward L. Marcus | Date signed<br>12/23/2013 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.<br>c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date<br>12/23/13 |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250
**Carol Massaro, 275 Branford Road, North Branford, CT 06471**

| Signed *(Official taking recognizance, "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date<br>12/23/2013 | Docket Number |
|---|---|---|---|

(Page 1 of 2)

RETURN DATE:      JANUARY 28, 2014         : SUPERIOR COURT
                                           :
ARTHUR ALDI, JR.,                          :
SHERRY ALDI                                : JUDICIAL DISTRICT OF
  Plaintiffs,                              : NORWICH-NEW LONDON
                                           :
              v.                           : AT NEW LONDON
                                           :
WELLS FARGO BANK, N.A.                      :
JERRY DELMATO                              :
  Defendants                               :
                                           : December 20, 2013

## COMPLAINT

### Preliminary Statement of Facts

1.       The plaintiffs, Arthur Aldi, Jr., and his wife, Sherry Aldi are individuals with a principal

place of residence located in the city of Norwich, Connecticut.

2.       The defendant, Wells Fargo Bank, National Association ("Wells Fargo"), is a national

bank which has registered to do business in the State of Connecticut.

3.       At all times material to this complaint, the defendant Wells Fargo, was in the business

of and did in fact originates and fund residential mortgages including so called reverse

mortgages and/or home equity conversion mortgages.

4.       At all times material to this complaint the defendant, Jerry Delmato, was an individual

with a place of residence within the State of Connecticut.

5.       At all times material to this complaint the defendant, Jerry Delmato, was in the business

of and did advise individuals with regard to obtaining residential mortgages, including reverse

'HE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

mortgages. Mr. Delmato held himself out as a reverse mortgage advisor doing business as Liberty Home Equity Solutions and also held himself out as a Reverse Mortgage Consultant acting on behalf of Wells Fargo.

6.      At all times material to this complaint the defendant, Jerry Delmato, held himself out as an authorized agent and consultant acting on behalf of the defendant, Wells Fargo and Wells Fargo held Mr. Delmato out as their authorized agent.

7.      In 2004 the plaintiffs, Mr. and Mrs. Aldi, consulted with the defendant, Jerry Delmato with regard to obtaining a reverse mortgage on their residence located at 9 Ridgewood Drive., Norwich, Connecticut. At that time both Mr. and Mrs. Aldi were owners of that property.

8.      At the time that Mr. and Mrs. Aldi were speaking to Mr. Delmato with regard to a reverse mortgage, Mr. Aldi was 69 years old and Mrs. Aldi was 53 years old.

9.      Mr. Delmato informed Mr. and Mrs. Aldi that they could not obtain a reverse mortgage so long as Mrs. Aldi remained an owner of their property. Mr. Delmato went on to suggest that if Mr. Aldi was the sole owner of the property that they would be able to obtain the reverse mortgage.

10.     Mr. Delmato specifically represented to both Mr. and Mrs. Aldi that once Mrs. Aldi reached the age of 62 years, she could be added to the reverse mortgage thereby preventing Wells Fargo (or any future holder of the reverse mortgage) from obtaining possession of the Premises at any time before the death of both Mr. and Mrs. Aldi

11.     Subsequently, based upon the representations and the advice given to Mr. and Mrs. Aldi, they did ultimately transfer ownership of the aforementioned property solely to Mr. Aldi.

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

This was completed by way of quit claim deed dated November 22, 2004. (Copy attached as Exhibit A and incorporated by reference).

12.     Subsequently, on November 24, 2004, Mr. Aldi entered into a reverse mortgage with the defendant Wells Fargo and, upon information and belief, said mortgage was recorded on the land records in and for the City of Norwich, Connecticut and constitutes a valid lien against the aforementioned property.  (Copy attached as Exhibit B and incorporated by reference).

13.     In 2013, upon Sherry Aldi reaching the age of 62, the plaintiffs requested that Mrs. Aldi be added to the reverse mortgage as has been previously represented would be possible by Mr. Delmato.

14.     Despite repeated demands, the defendant Wells Fargo has failed and refused to add Mrs. Aldi to the reverse mortgage.

15.     As a consequence of the above, if Mr. Aldi were to pass away at any point henceforth, the Aldi's home would be subject to immediate foreclosure by the current holder of the reverse mortgage.

**First Count** (Misrepresentation)

1. – 15.  Paragraphs 1 through 15 of the preliminary statements of fact are incorporated into the First Count as if fully set forth herein.

16.     In reliance upon the actions and representations of the Defendants Jerry Delmato, both in his individual capacity and in his capacity as agent for Wells Fargo:

'HE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

a)     the Plaintiff, Mrs. Aldi, quit claimed all of her right, title and interest to her home at 9 Ridgewood Drive, Norwich, Connecticut to her husband, Arthur Aldi, Jr.; and

b)     the Plaintiff, Mr. Aldi entered into a reverse mortgage with Wells Fargo;

17.    The Plaintiffs have been damaged as a direct and proximate result of the aforementioned actions of the Defendants in one or more of the following ways:

a)     Contrary to the representations of Wells Fargo, by and through its authorized agent, Mrs. Aldi was not added to the reverse mortgage and, consequently has no legal title to the Premises and will, upon the death of Mr. Aldi, be subject to immediate foreclosure unless the balance of the reverse mortgage is not paid in full immediately.

b)     Upon the death of Mr. Aldi, Mrs. Aldi will incur great damage and expense in either: paying off the mortgage to Wells Fargo or obtaining her own housing for the remainder of her life.

**Second Count** (Promissory Estoppel)

1. – 16.  Paragraphs 1 through 16 of the First Count are incorporated into the Second Count as if fully set forth herein.

17.    Prior to Mrs. Aldi quit claiming her interest in the Premises to Mr. Aldi and Mr. Aldi

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

entering into a reverse mortgage with Wells Fargo, the Defendant, Jerry Delmato, acting on his

own account and as the authorized agent of Wells Fargo, made clear and unambiguous

promises to Mr. and Mrs. Aldi that upon reaching the age of 62, Mrs.. Aldi would be added to

the reverse mortgage, thereby preventing Wells Fargo (or any future holder of the reverse

mortgage) from obtaining possession of the Premises at any time before the death of <u>both</u> Mr.

and Mrs. Aldi.

18.     Mr. and Mrs. Aldi reasonably relied on the aforementioned representations to their

detriment in quit-claiming the Premises into Mr. Aldi's sole name and then entering into a

reverse mortgage with Wells Fargo.

19.     The Plaintiffs have been damaged as a direct and proximate result of the

aforementioned actions of the Defendants in one or more of the following ways:

    a)     Contrary to the representations of Wells Fargo, by and through its authorized

           agent, Mrs. Aldi was not added to the reverse mortgage and, consequently has

           no legal title to the Premises and will, upon the death of Mr. Aldi, be subject to

           immediate foreclosure unless the balance of the reverse mortgage is not paid in

           full immediately.

    b)     Upon the death of Mr. Aldi, Mrs. Aldi will incur great damage and expense in

           either: paying off the mortgage to Wells Fargo or obtaining her own housing for

           the remainder of her life.

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

**Third Count** (Fraud)

1.-18.  Paragraphs 1 through 18 of the Second Count are incorporated into the Third Count as if fully set forth herein.

19.     The aforementioned representations by the Defendants were false and the Defendants knew, or reasonably should have known, that they were false.

20.     The Defendants knew or reasonably should have known that the Plaintiffs, Arthur Aldi, Jr. and Sherry Aldi, would rely on their actions and representations.

20.     In reliance upon the actions and representations of the Defendants, Mr. and Mrs. Aldi acted to their detriment in quit-claiming the Premises into Mr. Aldi's sole name and then entering into a reverse mortgage with Wells Fargo.

21.     The Plaintiffs have been damaged as a direct and proximate result of the aforementioned actions of the Defendants in one or more of the following ways:

      a)      Contrary to the representations of Wells Fargo, by and through its authorized agent, Mrs. Aldi was not added to the reverse mortgage and, consequently has no legal title to the Premises and will, upon the death of Mr. Aldi, be subject to immediate foreclosure unless the balance of the reverse mortgage is not paid in full immediately.

      b)      Upon the death of Mr. Aldi, Mrs. Aldi will incur great damage and expense in

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

either: paying off the mortgage to Wells Fargo or obtaining her own housing for the remainder of her life.

**Fourth Count** (Breach of Agreement)

1.-16.  Paragraphs 1 through 16 of the First Count are incorporated into the Fourth Count as if fully set forth herein

17.     The Defendant, Wells Fargo, acting by and through its authorized agent, agreed to add Mrs. Aldi to the reverse mortgage, upon her reaching the age of 62 years thereby preventing Wells Fargo (or any future holder of the reverse mortgage) from obtaining possession of the Premises at any time before the death of <u>both</u> Mr. and Mrs. Aldi

18.     In consideration of that agreement, Mrs. Aldi quit-claimed all of her right, title and interest in and to the Premises to Mr. Aldi and Mr. Aldi entered into a reverse mortgage with Wells Fargo.

19.     Wells Fargo has breached its agreement with Mr. and Mrs. Aldi by failing and refusing to add Mrs. Aldi to the reverse mortgage, despite demand.

20.     The Plaintiffs have been damaged as a direct and proximate result of the aforementioned breach in one or more of the following ways:

    a.  Contrary to the representations of Wells Fargo, by and through its authorized agent, Mrs. Aldi was not added to the reverse mortgage and, consequently has no legal title

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

to the Premises and will, upon the death of Mr. Aldi, be subject to immediate foreclosure unless the balance of the reverse mortgage is not paid in full immediately.

b.  Upon the death of Mr. Aldi, Mrs. Aldi will incur great damage and expense in either: paying off the mortgage to Wells Fargo or obtaining her own housing for the remainder of her life.

**Fifth Count** (Declaratory Relief – As to Wells Fargo only)

1-18.  Paragraphs 1 through 18 of the Second Count are incorporated into the Fifth Count as if fully set forth herein.

19.    The mortgage entered into on November 24, 2004 by and between Mr. Aldi and Wells Fargo provides, in pertinent part, that the lender may require immediate payment in full of all sums secured by the mortgage if Mr. Aldi dies and the property is not the principal residence of at least one surviving borrower. Mrs. Aldi is not a "borrower" as defined within said mortgage.

20.    The terms and conditions of the aforementioned mortgage are governed by federal law, including but not limited to, 12 U.S.C. § 1715z-20. 12 U.S.C. § 1715z-20 indicates, in pertinent part, that in order to provide government insurance for a home equity conversion mortgage, such as the one taken out by Mr. Aldi, such mortgage must provide that the homeowners obligation to satisfy the loan obligation is deferred until the homeowners death, the sale of the home, or the occurrence of other events specified in regulations promulgated by the Secretary of Housing and Urban Development. Said statute , in subsection (j) defines

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

"homeowner" to include the spouse of a homeowner.

21.     The mortgage documents signed by and between Wells Fargo and Mr. Aldi  are in direct violation of the terms of 12 U.S.C. § 1715z-20 in that, under those documents, Wells Fargo will have the right to force satisfaction of the loan obligation in the event that Mr. Aldi passes away or leaves the home, even in the event that Mrs. Aldi is still using said home as her primary residence.

22.     Mrs. Aldi would not find herself in the present situation, but for the conduct of Wells Fargo and it's agents and representatives.

23.     The plaintiffs pray for a declaratory judgment by which this court orders that the obligation to satisfy the loan is deferred until such time as both Mr. and Mrs. Aldi satisfy those conditions set forth in 12 U.S.C. § 1715z-20 and more specifically, that Wells Fargo may not require satisfaction of the loan obligations until such time as Mrs. Aldi ceases using the premises as her primary home, as provided in in12 U.S.C. § 1715z-20(j).

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

WHEREFORE, the plaintiff prays:

i)  That judgment enter against the Defendants;

ii)  That an order enter requiring Wells Fargo to add Sherry Aldi as a borrower to the

reverse mortgage entered into between Wells Fargo and Arthur Aldi, Jr. as

referenced herein;

iii)  That money damages be awarded;

iv)  Declaratory Judgment be entered in accordance with Count Five

iv) For such further relief as may be just, equitable, and proper.

Dated at North Branford, Connecticut this ___ day of December, 2013.

                              THE PLAINTIFFS
                              Arthur Aldi, Jr.
                              Sherry Aldi

                    BY
                              Edward L. Marcus
                              John S. Rubrich
                              The Marcus Law Firm
                              Their Attorneys

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

RETURN DATE:        JANUARY 28, 2014        : SUPERIOR COURT

ARTHUR ALDI, JR.,                           :
SHERRY ALDI                                 : JUDICIAL DISTRICT OF
  Plaintiffs,                               : NORWICH-NEW LONDON
                                            :
            v.                              : AT NEW LONDON
                                            :
WELLS FARGO BANK, N.A.                       :
JERRY DELMATO                               :
  Defendants                                :
                                            : December 20, 2013

### STATEMENT RE: AMOUNT IN DEMAND

The Plaintiffs, Arthur Aldi, Jr. and Sherry Aldi, , claim that the amount in demand is in excess of Fifteen Thousand ($15,000.00) dollars.

                                 **THE PLAINTIFFS**
                                 **Arthur Aldi, Jr.**
                                 **Sherry Aldi**

                        BY:
                                 **Edward L. Marcus, Esq.**
                                 **John S. Rubrich, Esq.**
                                 The Marcus Law Firm
                                 Their Attorneys

THE MARCUS LAW FIRM
275 BRANFORD ROAD
NORTH BRANFORD, CT
06471
(203) 481-3330
FAX (203) 488-4070
JURIS NO.35870

## EXHIBIT A

INSTR # 2004010186
ON BK 02020 PG 0342
RECORDED 12/01/2004
DEE ANNE BRENNAN TOWN CLERK
NORWICH, CT.

C 30-QUIT CLAIM DEED (REVISED)
GR ST-J
IND. OR CORP.

*To all People to Whom these Presents shall Come. Greeting :*
*Know Ye,   That*

### SHERRY D. ALDI

*whose mailing address is:*      9 Ridgewood Drive, Norwich, Connecticut  06360
*herein designated as the Releasor, for the consideration of  ONE ($1.00) DOLLAR, and other good and valuable consideration,*
*received to Releasor's full satisfaction from*

### ARTHUR R. ALDI, JR.

*whose mailing address is:*     9 Ridgewood Drive, Norwich, Connecticut
06360
*herein designated as the Releasee, does by these presents remise, release and forever Quit-Claim unto the said Releasee and to the Releasee's heirs, successors and assigns forever, all the right, title, interest, claim and demand whatsoever as the said Releasor has or ought to have in or to*

**PROPERTY:** 9 Ridgewood Drive, Norwich, Connecticut  06360

### SEE ATTACHED SCHEDULE A

The Grantees herein assume and agree to pay taxes to the Town of Norwich as they hereinafter become due and payable.

*To have and to hold the premises hereby remised, released and quit-claimed with all the appurtenances unto the said Releasee and to the Releasee's heirs, successors and assigns forever, so that  neither the Releasor nor the Releasor's heirs, successors or assigns nor any other person claiming under or through the Releasor shall hereafter have any claim, right or title in or to the premises or any part thereof, but therefrom the Releasor and they are by these presents forever barred and excluded.  In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.*

*In Witness Whereof, the Releasor has signed and sealed this instrument, or if a corporation, it has caused these presents to be signed by its corporate officers and its corporate seal to be hereto affixed this 22 nd  day of November, 2004.*

*Signed, Sealed and Delivered in the Presence of*

_____
ANGELA ROSCE (Witness)

_____
Karen C. Beard   (Witness)

State of Connecticut   )
                                      ) SS: Groton
County of New London   )

_____
Sherry D. Aldi

$ -0-   CONNECTICUT TAX RECEIVE
$  0 -   CONVEYANCE TAX RECEIVED
DEE ANNE BRENNAN NORWICH TOWN CLERK

The foregoing instrument was acknowledged before me this 22nd  day of April, 2004 by
Sherry D. Aldi.

_____
Commissioner of the Superior Court
Notary Public
My Commission Expires:

DOBS & JENSEN, LLC
Attorneys at law

190 Thames Street,
Groton, CT 06340
Tel (860) 445-8911
Or
Fax (860) 445-5909

JURIS No. 406333

Book2020/Page342

## SCHEDULE A.

A certain tract or parcel of land, together with the buildings and improvements thereon, located in the Town of Norwich, County of New London and State of Connecticut, bounded and described as follows:

Beginning at a point on the southwesterly line of Ridgewood Drive at the dividing line between Lot #45 and Lot #42 on a plan hereinafter mentioned; thence running northeasterly along said road line on a curve to the right whose radius is 250 feet a distance of 99.56 feet measured on the arc of said curve; thence southwesterly 138.7 feet, abutting southeasterly on Lot #47; thence deflecting 123°55'30" to the right and running northerly 92.9 feet; abutting westerly on Lot #41; thence deflecting 41°11' to the right and running northeasterly 83.7 feet to the point of beginning, abutting northwesterly on Lot #42.

Being Lot #45 on a "Plan of Laurel Park, Francis W. Brown, Developer, by Chandler & Palmer, March 1951". Said premises are also shown as Lot No. 45 on "Plan II of Laurel Park Plan by Earl W. Phillips" on file in Plan Book 4, Page 62 of Norwich Land Records.

Said premises are conveyed subject to easements, restrictions and agreements as of record appear, building and building line restrictions, any and all provision of municipal ordinances including planning, zoning and inland wetland regulations of the Town of Norwich, Connecticut, public or private law, and taxes to the Town of Norwich, Connecticut on the List of October 1, 1991 and thereafter coming due.

Reference is hereby made to a Warranty Deed from The Laurel Realty Company to Robert K. McNally and Joan E. McNally recorded at Volume 246, Page 567 of Norwich Land Records.

EXHIBIT B

**RECORD AND RETURN TO:**
WELLS FARGO BANK, N. A.
3601 MINNESOTA DRIVE, MAC: X4701-022
BLOOMINGTON, MN 55435

———————————— [Space Above This Line For Recording Data] ————————————

State of Connecticut                          FHA Case No. 061-2825492-952/255
                                                         0048367254

# ADJUSTABLE RATE OPEN-END MORTGAGE
### HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is a reverse mortgage as defined by section 36a-265[a] (4) of the Connecticut General Statutes Annotated and is given on   **NOVEMBER 24, 2004**   . The mortgagor is **ARTHUR R. ALDI, JR.**

whose address is   **9 RIDGEWOOD DRIVE,
NORWICH, CONNECTICUT 06360**                                                    ("Borrower").
This Security Instrument is given to
**WELLS FARGO BANK, N. A.**
                                                                          , which is
organized and existing under the laws of   **THE UNITED STATES OF AMERICA**   , and whose address is
**P.O. BOX 10304, DES MOINES, IOWA 50306-0304**

("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). If Borrower has chosen to receive mortgage proceeds under a Tenure, Term, Modified Tenure, or Modified Term payment plan, the Lender agrees to pay consecutive monthly installments of principal in the amount of

Dollars ($   N/A   ) to Borrower on the   N/A   day of each month beginning   N/A   .
N/A   . If Borrower has elected a Line of Credit payment plan, installments will be paid to Borrower when requested in accordance with the Loan Agreement. If Borrower has elected a Modified Tenure payment plan or a Modified Term payment plan, in addition to the scheduled monthly payments disclosed above, installments will be paid to Borrower when requested under the line of credit in accordance with the Loan Agreement. The amount of the monthly installments and the availability of the line of credit are subject to change if the Borrower chooses to change the type of payment plan originally selected. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED SIX THOUSAND THREE HUNDRED SEVENTY FIVE AND 00/100** - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $   306,375.00   ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **NOVEMBER 08** , **2086** . For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **NEW LONDON**                County, Connecticut:

XD6B : 02/02                                    Page 1 of 8

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of  9 RIDGEWOOD DRIVE
                                                              [Street]

   NORWICH                    ,    CONNECTICUT            06360        ("Property Address");
   [City]                              [State]                  [Zip Code]

[The following paragraph is applicable only if, prior to loan closing, repairs are deemed necessary in order for the Property to meet the United States Department of Housing and Urban Development's Minimum Property Standards.]

   Buildings or improvements on the Property are in the process of construction or repair, or to be erected or repaired and Lender has agreed to make the loan herein described to be paid over to Borrower in installments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of Lender, so that when all of the work on the Property shall have been completed to the satisfaction of Lender, Lender shall then pay over to Borrower (from time to time as necessary under the terms of the Loan Agreement) any balance necessary to complete the full loan up to a maximum amount of $            N/A            . Borrower agrees to complete the erection or repair of said buildings to the satisfaction of Lender within a reasonable time from the date hereof or at the latest on or before  N/A

   TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

   2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

   3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

09XA : 01/97                                     Page 2 of 8

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5.  **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.  **Inspection.**  Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 02/02                                    Page 3

**8.  Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.  Grounds for Acceleration of Debt.**

(a)  **Due and Payable.**  Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i)  A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b)  **Due and Payable with Secretary Approval.**  Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii)  An obligation of the Borrower under this Security Instrument is not performed.

(c)  **Notice to Lender.**  Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d)  **Notice to Secretary and Borrower.**  Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i)  Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)  Pay the balance in full; or

(iii)  Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv)  Provide the Lender with a deed in lieu of foreclosure.

(e)  **Trusts.**  Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f)  **Mortgage Not Insured.**  Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within  **SIXTY DAYS**                        from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to    **SIXTY DAYS**                   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  No Deficiency Judgments.**  Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

04XA : 02/02                                    Page-I

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA  02/02                                        Page 5

(d) No Duty of the Secretary.  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.  Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.  Successors and Assigns Bound; Joint and Several Liability.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.  Borrower's Copy.  Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

19.  Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of          4.0300   % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **FEBRUARY, 2005**          , and on [☐]     that day of each succeeding [X] the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

[☐]     (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

[X]     (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FOURTEEN AND 030/1000**                         percent (   14.03000  %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Waiver.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees and other charges, is obligatory.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
GERALD M. DELMATO                                  ARTHUR R. ALDI, JR.                        -Borrower

_____          _____ (Seal)
Wade D. Jensen                                                                                              -Borrower

———————— [Space Below This Line For Acknowledgment] ————————

State of  Connecticut

County of  New London

This instrument was acknowledged before me this  24th day of November, 2004 , by
Arthur R. Aldi, Jr.

_____
Notary Public  Commissioner of the Superior
My Commission Expires:                                          Court

XD71 : 10/01                                    Page 8 of 8

RECORD AND RETURN TO:
WELLS FARGO BANK, N. A.
3601 MINNESOTA DRIVE, MAC: X4701-022
BLOOMINGTON, MN 55435

——————————————  [Space Above This Line For Recording Data]  ——————————————

State of Connecticut                               FHA Case No. 061-2825492-952/255
                                                        01148367254

# ADJUSTABLE RATE OPEN-END MORTGAGE
## HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is a reverse annuity mortgage as defined by section 36a-265(a) (4) of the Connecticut General Statutes Annotated and is given on **NOVEMBER 24, 2004**          . The mortgagor is **ARTHUR R. ALDI, JR.**

whose address is  **9 RIDGEWOOD DRIVE,**
**NORWICH, CONNECTICUT 06360**                              ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary") Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). If Borrower has chosen to receive mortgage proceeds under a Tenure, Term, Modified Tenure, or Modified Term payment plan, the Lender agrees to pay consecutive monthly installments of principal in the amount of

                                                    A
Dollars ($  N/A     ) to Borrower on the  N/A      day of each month beginning  N/A
**N/A**     . If Borrower has elected a Line of Credit payment plan, installments will be paid to Borrower when requested in accordance with the Loan Agreement. If Borrower has elected a Modified Tenure payment plan or a Modified Term payment plan, in addition to the scheduled monthly payments disclosed above, installments will be paid to Borrower when requested under the line of credit in accordance with the Loan Agreement. The amount of the monthly installments and the availability of the line of credit are subject to change if the Borrower chooses to change the type of payment plan originally selected. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED SIX THOUSAND THREE HUNDRED SEVENTY FIVE AND 00/100 - - - - - - - - - - - - -**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
(U.S. $   **306,375.00**      ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **NOVEMBER 08    , 2086** . For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in  **NEW LONDON**            County, Connecticut:

XD72 - 02/02                          Page 1 of 8

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 9 RIDGEWOOD DRIVE
[Street]

NORWICH                    , CONNECTICUT          06360          ("Property Address"):
[City]                      [State]              [Zip Code]

[The following paragraph is applicable only if, prior to loan closing, repairs are deemed necessary in order for the Property to meet the United States' Department of Housing and Urban Development's Minimum Property Standards.]

Buildings or improvements on the Property are in the process of construction or repair, or to be erected or repaired and Lender has agreed to make the loan herein described to be paid over to Borrower in installments as the work progresses, the time and amount of each advancement to be at the sole discretion and upon the estimate of Lender, so that when all of the work on the Property shall have been completed to the satisfaction of Lender. Lender shall then pay over to Borrower (from time to time as necessary under the terms of the Loan Agreement) any balance necessary to complete the full loan up to a maximum amount of $      N/A      . Borrower agrees to complete the erection or repair of said buildings to the satisfaction of Lender within a reasonable time from the date hereof or at the latest on or before   N/A

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

2. Payment of Property Charges. Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

3. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

19XA · 09/97                              Page 2 of 8

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

13XA : 11/96                                        Page 3

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

14XA - 11/96                          Page 4

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

16XA : 11/96                              Page 5

(c) Restrictions on Enforcement.  Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14.  Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.  Successors and Assigns Bound; Joint and Several Liability.  Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18.  Borrower's Copy.  Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

19.  Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

XD73 : 02/02                                          Page 6 of 8

21. **Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

22. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of      4.0300   % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary.  Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate.  The interest rate may change on the first day of FEBRUARY, 2005          , and on ☐       that day of each succeeding
☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above FOURTEEN AND 030/1000          percent (   14.03000   %). 

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Waiver.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees and other charges, is obligatory.

XD74  02/02                                    Page 7 of 8

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Shared Appreciation Rider ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
GERALD M. DELHATO                 ARTHUR R. ALDI, JR.          -Borrower

_____   _____ (Seal)
Wade D. Jensen                                                 -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

State of  Connecticut

County of  New London

This instrument was acknowledged before me this 24th day of November, 2004, by Arthur R. Aldi, Jr.

_____
Notary Public- Commissioner of the Superior Court
My Commission Expires:

XD75 : 10/01                    Page 8 of 8